IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JORGE LUIS LEAL,

    Plaintiff,

v.

KALEB CROMPTON, SHAWN
FREEMAN, JONATHAN YINGLING,
and SOMMER NORTH,

    Defendants.

Case No. 24-cv-105-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Jorge Luis Leal, an inmate of the Bureau of Prisons who is currently incarcerated at Federal Correctional Institution—Forrest City, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while he was a pretrial detainee at the Williamson County Jail. Defendants Kaleb Crompton, Shawn Freeman, Jonathan Yingling, and Sommer North have moved for summary judgment (Doc. 21), arguing that Leal failed to exhaust his administrative remedies prior to filing his lawsuit. Leal filed a response (Doc. 23) in opposition to the motion.

## BACKGROUND

On June 7, 2022, Leal filed his Complaint in *Leal v. Pinkerton, et al.*, Case No. 22-cv-1172-RJD, alleging violations of his constitutional rights while at the Williamson County Jail. Leal's original Complaint was dismissed because it violated Federal Rule of Civil Procedure 8 and included numerous claims against various individual and group

1

defendants. Case No. 22-cv-1172-RJD, Doc. 17. It also violated the rules on joinder because the various claims involved different defendants, separate transactions or occurrences, and relied on different legal theories. *Id.*

On March 21, 2023, Leal filed an Amended Complaint that again included several unrelated claims. *See* Case No. 22-cv-1172-RJD, Docs. 20, 23. On October 30, 2023, the district court again found that several of Leal's claims, including those against Defendants Kaleb Crompton, Shawn Freeman, Jonathan Yingling, and Sommer North, were improperly joined and should be severed from the original pleading. Case No. 23-cv-1172-RJD, Doc. 23, p. 8. Leal was granted time to decide if he wanted to proceed with the claims in a separate lawsuit or dismiss them. Leal advised the Court of his desire to proceed with the severed claims. On January 17, 2024, this case was opened with the severed claims (Doc. 1). After review of the claims pursuant to 28 U.S.C. § 1915A, Leal was allowed to proceed on the following counts:

> Count 16: Fourteenth Amendment claim against Kaleb Crompton for denying Leal mental health treatment necessitated by a PREA investigation from November 23 until December 8, 2021.
>
> Count 17: First Amendment claim against Shawn Freeman, Jonathan Yingling, and Sommer North for retaliating against Leal for filing a lawsuit by conducting a shakedown of his cell in December 2021 or January 2022.

(Doc. 12, p. 2).

As it relates to the claims in this case, Leal alleged that he was placed on lockdown from November 23, 2021, until December 8, 2021 (Doc. 6, p. 4). While on lockdown in isolation, Leal suffered from increased symptoms of depression (*Id.*). Kaleb Crompton failed to schedule Leal for counseling despite his worsening condition (*Id.* at p. 5). Leal

2

then made attempts to file a lawsuit about this event and other alleged constitutional violations he faced at the jail (*Id.*). In response, Shawn Freeman, Jonathan Yingling, and Sommer North retaliated against him by conducting an intrusive shakedown of his cell (*Id.*). They also read and scattered his legal documents.

Leal was housed at the Williamson County Jail from September 7, 2019, through June 23, 2022 (Doc. 21-1, pp. 1, 253-256). Assistant Jail Administrator Dennis Pinkerton stated in his affidavit that during Leal's detention, he had access to paper grievance forms and paper medical request forms (*Id.* at p. 2). From July 16, 2020, through October 25, 2021, the housing units contained kiosks where inmates could send messages or electronic requests to jail administrators (*Id.*). The kiosks also contained paper grievance forms and medical request forms (*Id.*). Although the electronic grievance system was discontinued in October 2021, inmates could still use the kiosks to obtain and complete paper grievances (*Id.*). Upon being booked into the jail, each inmate received a copy of the Inmate Handbook containing the Inmate Grievance Procedures (*Id.*). On September 7, 2019, Leal received and signed for a copy of the Inmate Handbook (Doc. 21-1, p. 2; Doc. 21-3).

Defendants identified two grievances related to Leal's mental health treatment.

> **Inmate Grievance 07/26/2021:** Leal submitted a grievance on July 26, 2021, about his mental health. He stated that he requested counseling from Gibbs, but she told Leal that no one could come to the jail because of COVID (Doc. 21-1, pp. 28, 89; Doc. 21-2, p. 13). Leal indicated that he was feeling better physically but his mental, emotional, and psychological health were not well, and he had worsening depression and anxiety (*Id.*). He requested access to a counselor as soon as possible (*Id.*). Although there is a place on the form for Leal to note the Step in the grievance process, Leal left that

3

portion of the grievance blank (*Id.*). There does not appear to be a response to the grievance from jail officials (*Id.*).

**Inmate Grievance 8/03/2021:** On August 3, 2021, Leal submitted a grievance with several questions posed to Dennis Pinkerton (Doc. 21-1, pp. 22, 88; Doc. 21-2, pp. 27-28). Leal noted that the week prior to his grievance, he submitted a Step 2 grievance to Officer Havens about his mental health and requested counseling, but he never received a response to his grievance (*Id.*). He also never received medical care. He questioned whether his Step 2 grievance was being investigated, if he would receive a response, or whether he should proceed with Step 4 of the process (*Id.*). Leal also discussed the lack of treatment for a physical ailment, including damage to his teeth and gums from an assault (Doc. 21-2, p. 28). Attached to his grievance is an email dated from Pinkerton dated August 3, 2021 (Doc. 21-1, p. 23). Pinkerton asks another jail official to evaluate Leal for mental health issues (*Id.*).

Defendants also identify a series of grievances related to the shakedown of his cell.

**Inmate Grievance 1/2/22:** On January 2, 2022, Leal submitted a grievance labeled Step 1 regarding a shakedown of his cell. He indicated that on January 1, 2022, Sommer read his legal documents during the shakedown, noting that the documents were inside an envelope marked "legal" (Doc. 21-1, p. 160). Leal noted that Sommer called Officer Yingling into the cell to show him the legal documents (*Id.*). In response to the grievance, the reviewing officer noted that Officer North denied reading Leal's legal mail but indicated that she did go through his property (*Id.*). The reviewing officer asked Leal for proof that Officer North was reading his legal paperwork (*Id.*).

**Inmate Grievance 1/2/2022:** Leal submitted a Step 2 grievance noting that Officer Allen replied to his Step 1 grievance (Doc. 21-1, p. 159). Leal noted that during the shakedown, North read confidential documents that were inside his legal envelopes (*Id.*). Based on what she saw in the documents, North directed Yingling to come into the cell and look at the documents (*Id.*). North responded to the grievance, noting that she and Correctional Officer Freeman conducted a random shakedown of Leal's cell (*Id.*). But she denied reading his legal mail. She did search through his packages for contraband. The supervisor also came into the cell to take note of 20 packages of Tylenol and Ibuprofen in Leal's cell (*Id.*). The medications were noted because Leal had requested free Ibuprofen from the nurses. The officers also removed a trash bag of trash, leftover food, and spoiled milks (*Id.*).

**Inmate Grievance 1-2-22:** Although not attached to the grievance records submitted with Defendants' motion for summary judgment, Leal's original

>    Complaint included a copy of his Step 3 grievance (Doc. 2, p. 35). In his Step 3 grievance, Leal noted that North violated the jail's own rules by writing beyond the space allotted for a response (*Id*.). He reiterated that North shook down his cell and read his legal documents. An administrator responded to the grievance noting that inmates cannot dictate the length of a shakedown (*Id*.). The response also noted that staff can go through all of an inmate's items during a search even if it is labeled as "legal" (*Id*.). The administrator noted that Leal failed to provide any proof of his claims as required by the Step 1 response (*Id*.).
>
> **Inmate Grievance 1-5-22:**   In his grievance marked as Step 4, Leal notes that Lieutenant Havens replied to his Step 3 requesting documentation to support Leal's claim that North read his legal documents (Doc. 21-1, p. 189). Leal noted that documents were attached to his Step 4 grievance to support his claims (*Id*.). Those documents also appear in Leal's grievance file (Doc. 21-1, pp. 152-158). The supporting documents note that Havens claimed that inmates could not dictate the length of a shakedown, but Leal argued that Havens missed the point of the grievance that officers improperly looked through his legal materials (*Id*. at p. 152). Leal noted that Havens also requested documentation to support Leal's claim, but Leal noted that it would be impossible to provide proof given the limited space on a grievance form (*Id*. at p. 153). The grievance notes that the grievance was referred to the Sheriff.

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement.

5

*Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if

there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Williamson County Jail Grievance Requirements

As a detainee at the Williamson County Jail, Leal was subject to the jail's grievance requirements. The policies and procedures regarding grievances are set forth in the Williamson County Jail's Inmate Handbook (Doc. 21-1, pp. 4-20). The Inmate Grievance Procedure requires an inmate to first try to resolve problems informally with the Housing Officer (*Id.* at p. 13). Inmates may then file grievances when: "subjected to a criminal act by another inmate, a prohibited act by a staff member, abuse, harassment, violation of civil rights, or denied privileges, without just cause." (*Id.*).

If an inmate files a grievance, the inmate is subject to a four-step process:

Step 1: On the Grievance Form, write a request to the Housing Officer and explain what your grievance is. If your grievance is not resolved, go to Step 2.

Step 2: Write a grievance form request to the Shift Sergeant/Supervisor stating your grievance. Include the name of the officer who already answered the grievance. If the grievance is not resolved, go to Step 3.

Step 3: Write a grievance form request to the Jail Administrator by following the same procedure you did with the Shift Sergeant/Supervisor. If the grievance is not resolved, go to Step 4.

Step 4: Write a request form to the Sheriff by following the same procedure as you did with the Jail Administrator. The Sheriff's decision will be final.

(Doc. 21-1, p. 13).

The Inmate Grievance Procedure requires that an inmate file his grievance within 24 hours of the time of the incident (*Id.*). An inmate also has 24 hours from the denial of a grievance to submit the grievance to the next step in the process (*Id.*).

## DISCUSSION

### A. Count 16

As to Leal's claim in Count 16 against Kaleb Crompton, there are no grievances in the record regarding Crompton's failure to provide Leal with access to mental health care in November and December 2021. Leal filed some grievances regarding his mental health, but those grievances were filed in July 2021 and do no mention Crompton. Leal's claim focuses on care that he sought in November and December, and none of Leal's grievances complain about mental health care sought during the relevant time period.[1]

Leal does not deny that he failed to file any grievances about his access to mental health care in November and December 2021. Instead, Leal argues that he lacks any available administrative remedies because he is no longer housed at the Williamson County Jail. He argues that because he has been transferred from the jail, he no longer has access to the jail's grievance procedures and thus he does not need to exhaust his administrative remedies.

---

[1] Leal attached two grievances to his Complaint from the relevant time period (Doc. 2, pp. 30-31). The grievances were filed December 1, 2021 (Step 1 Grievance) and December 2, 2021 (Step 2 Grievance). The grievances discuss his placement in segregation, arguing that he was being improperly disciplined and seeking his release and restoration of his privileges (*Id.*). The grievances do not mention Crompton nor does Leal discuss his access to mental health care. These grievances do not serve to exhaust his claim against Crompton.

But at the time Leal filed his original Complaint against Crompton, he was housed at the Williamson County Jail. Leal filed his original Complaint in *Leal v. Pinkerton, et al.*, Case No. 22-cv-1172-RJD, on June 7, 2022.[2] At the time he filed his Complaint, Leal noted that he was detained at the jail. *See* Case No. 22-cv-1172-RJD, Doc. 1, p. 1. The jail records also indicate that he was housed at the Williamson County Jail from September 7, 2019, until June 23, 2022 (Doc. 21-1, pp. 1, 253). Thus, at the time he filed his Complaint against Crompton, he was "a prisoner confined in [a] jail" and subject to the exhaustion requirements of 42 U.S.C. § 1997e(a). *See Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004) ("In determining whether a plaintiff is a 'prisoner confined in jail,' [under the PLRA] we must look to the status of the plaintiff at the time he brings his suit.").

Although Leal filed an Amended Complaint after his transfer from the Williamson County Jail, he raised the same claims as in his original pleading, including his claim against Crompton. Because his claim against Crompton was present in his original pleading—filed when he was still housed at the Williamson County Jail—he was subject to exhaustion requirements. *Chambers*, 956 F.3d at 984-85. The Court also recognizes that Leal is proceeding in a different case than the one he originally filed against Crompton and others. His claim against Crompton was severed from *Leal v. Pinkerton*, Case No. 22-cv-1172-RJD, because his claims were improperly joined under Federal Rule of Civil Procedure 20(a). But this Court has previously found that allowing an inmate to exhaust

---

[2] His claim that Crompton failed to provide him with a counselor for his worsening depression was included in his original Complaint (Doc. 1-1, pp. 38-39).

9

based on the severance of his claims would violate Seventh Circuit precedent and encourage prisoners to file multiple, unrelated claims against multiple defendants. *Gakuba v. Pannier*, No. 19-CV-1274-NJR, 2021 WL 1165114, at *4 (S.D. Ill. Mar. 26, 2021), *aff'd*, No. 21-1961, 2022 WL 1768843 (7th Cir. June 1, 2022). Thus, Leal was required to exhaust his administrative remedies before he filed his original Complaint. He failed to do so. Count 16 is, accordingly, **DISMISSED without prejudice**.

### B. Count 17

As to his claims in Count 17, Leal clearly exhausted his administrative remedies as to North, Yingling, and Freeman. His grievance records demonstrate that he filed a grievance regarding the shakedown and reading of his legal material through all four steps of the Williamson County Jail's grievance process. Although a grievance labeled Step 3 is not found in the grievance records submitted by Defendants, Leal attached his Step 3 grievance to his original Complaint. He also mentioned the Step 3 grievance response in documents attached to his Step 4 grievance. (Doc. 21-1, p. 189, 152-158). Leal pursued the grievance through all four steps as set forth in the Inmate Handbook.

Defendants argue that Leal failed to mention that he believed the shakedown was in retaliation for writing grievances. They argue that Leal's grievances make no mention of retaliation or the fact that he filed lawsuits that led to the shakedown of his cell. They also argue that complaining about the shakedown alone is not enough to grieve the claims in this lawsuit. But exhaustion is not intended to provide individual notice to each official who might later be sued, nor is it designed to provide notice of a particular legal theory. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); *Strong v. David*, 297 F.3d 646, 650

(7th Cir. 2002) ("When the administrative rulebook is silent…the grievant need not lay out the facts, articulate legal theories, or demand particular relief."). Instead, exhaustion is designed to provide the jail with notice of the problem and give them an opportunity to fix it. *Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "officials a fair opportunity to address [an inmate's] complaint." *Maddox*, 655 F.3d at 722.

Here, the Inmate Handbook is silent on the level of detail that an inmate must provide in order to properly exhaust a grievance. The handbook merely states that an inmate can grieve a number of topics and that the request must "explain what your grievance is" (Doc. 21-1, p. 13). Leal provided the jail with notice of his complaint that the officers improperly conducted a search of his cell and reviewed his legal materials. Although he did not mention his belief that the officers acted in retaliation for Leal's prior lawsuits or grievances, it was enough that he provided the jail with his complaint that officers were improperly searching his cell. He provided enough detail for officers to address his claims regarding the improper search. Thus, the Court finds that Leal properly exhausted his claim in Count 17.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. 21) is **GRANTED in part and DENIED in part**. Defendant Crompton is **GRANTED** summary judgment as to Count 16 because Leal failed to exhaust his claim prior to filing his original lawsuit. Count 16 against Crompton is **DISMISSED without prejudice**. Leal

exhausted his claims in Count 17, however, and thus the motion for summary judgment as to Freeman, Yingling, and North is **DENIED**.

    **IT IS SO ORDERED.**

    DATED:  **June 27, 2025**

                                          _____
                                          **NANCY J. ROSENSTENGEL**
                                          **Chief U.S. District Judge**