**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JORGE LUIS LEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2024-CV-00105-NJR |
| | ) | |
| PINKERTON, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO EXCEED DISCOVERY LIMITS FOR GOOD CAUSE AND MOTION TO COMPEL SUPPLEMENTAL DISCOVERY RESPONSES**

Plaintiff Jorge Luis Leal, proceeding pro se, respectfully moves this Court for an Order:

1. Granting Plaintiff leave to exceed the discovery limits contained in the Scheduling and Discovery Order for good cause shown;
2. Compelling Defendants to provide supplemental responses to Plaintiff's written discovery;
3. Compelling Defendants to explain the existence, preservation, retention, destruction, or nonexistence of video footage relating to the January 1, 2022 retaliatory shakedown;
4. Compelling production of additional logs, reports, notes, and records relating to the January 1, 2022 incident; and
5. Granting such other relief as the Court deems just and proper.

In support thereof, Plaintiff states as follows:

## I. INTRODUCTION

This action concerns Plaintiff's First Amendment retaliation claim arising from a targeted shakedown of Plaintiff's cell on January 1, 2022, after Defendants became aware that Plaintiff was preparing litigation concerning a prior assault and failure to protect him while confined at Williamson County Jail.

Defendants have produced certain records, including activity logs, grievance records, grievance responses, and Plaintiff's chirp communications.

However, Defendants have failed to produce critical evidence directly relating to the retaliatory shakedown, including video footage specifically requested by Plaintiff.

Additionally, Defendants have refused to answer numerous interrogatories solely because the Court's Scheduling Order imposed numerical limits on discovery.

1

Because the Scheduling Order expressly permits those limits to be increased upon a showing of good cause, Plaintiff seeks leave to obtain discovery necessary to fully and fairly litigate this action.

## II. RELEVANT PROCEDURAL HISTORY

The Court's Scheduling and Discovery Order provides:

"Each party is limited to serving 15 interrogatories, 15 requests for production of documents, and 10 requests for admission. On motion, these limits may be increased for good cause shown."

Defendants responded to Plaintiff's first set of interrogatories.  See **Exhibit E**.

However, numerous interrogatories were not answered.

Instead, Defendants objected solely on the basis that Plaintiff exceeded the numerical limit established by the Scheduling Order.

Defendants did not object on grounds of relevance, burden, privilege, proportionality, or lack of knowledge.

Accordingly, the sole issue before the Court is whether good cause exists to permit the additional discovery.

## III. GOOD CAUSE EXISTS TO EXCEED DISCOVERY LIMITS

Good cause exists for several reasons.

First, Plaintiff is proceeding pro se in a complex constitutional case involving multiple correctional officers, supervisors, and jail administrators.

Second, the additional discovery requests concern facts central to Plaintiff's retaliation claim, including:

- the January 1, 2022 shakedown;
- searches of Plaintiff's legal materials;
- alleged review of Plaintiff's legal documents;
- confiscation of legal materials;
- legal-mail incidents;
- communications among staff regarding Plaintiff;
- knowledge of Plaintiff's grievances;
- knowledge of Plaintiff's anticipated civil litigation.

Third, Defendants' discovery responses have generated additional factual issues requiring follow-up discovery.

For example, Defendant Yingling states that he supervised the January 1, 2022 shakedown and became involved after Officer North allegedly discovered an excess quantity of medication.

Yet Defendants have produced no reports, notes, memoranda, or video evidence documenting these events.

Fourth, Plaintiff has acted diligently throughout discovery and previously granted Defendants multiple extensions of time to respond to discovery requests. See **Exhibit A.**

Finally, the additional discovery sought is narrowly tailored to issues directly relevant to Plaintiff's First Amendment retaliation claim.

Accordingly, good cause exists to exceed the discovery limits established by the Scheduling Order.

## IV. MISSING VIDEO EVIDENCE

Plaintiff specifically requested:

"All video footage depicting the search or surrounding time period."

Defendants responded:

"None."

This response is insufficient.

The January 1, 2022 incident became the subject of formal grievances almost immediately.

On January 5, 2022, Plaintiff submitted a Step 4 grievance together with approximately nine pages of supporting documentation and witness statements. See **Exhibit D, Pgs. SD-2 and SD-7**.

Within that submission, Plaintiff expressly notified jail administration that the video footage should be preserved because it would be relevant to future civil litigation.

On January 7, 2022, Chief Hunter responded that he had reviewed Plaintiff's statements and supporting materials.

Thus, jail administration had notice of:

- the incident;
- Plaintiff's allegations;
- supporting witnesses;
- anticipated litigation;
- the importance of preserving video evidence.

3

Despite that notice, Defendants have not produced the requested footage and have not explained:

- whether video footage existed;
- what cameras covered E-Block;
- whether footage was reviewed;
- whether footage was preserved;
- whether footage was destroyed;
- who made preservation decisions;
- who made destruction decisions;
- when any destruction occurred.

Plaintiff respectfully requests that Defendants be ordered to provide complete supplemental responses addressing each of these issues.

## V. ADDITIONAL LOGS, REPORTS, AND RECORDS APPEAR TO EXIST

Defendants produced:

- Activity Logs from approximately December 2021 through February 2022;
- grievance records;
- grievance responses;
- chirp communications;

but produced only a single Inmate Operations Log Entry.

Defendants also produced no:

- shakedown reports;
- incident reports;
- supervisor reports;
- investigative reports;
- internal memoranda;
- preservation records;
- destruction records;
- notes prepared by North, Freeman, Yingling, Havens, Pinkerton, Hunter, or other staff.

Given Defendants' own discovery responses describing supervisory involvement in the January 1, 2022 shakedown, Plaintiff believes additional responsive records likely exist or once existed.

Plaintiff respectfully requests that Defendants be ordered to conduct a reasonable search and produce all such records or specifically identify what happened to them.

## VI. SCREENSHOT COMPOSITION DEMONSTRATES THE IMPORTANCE OF THE MISSING VIDEO

4

Plaintiff has attached as **Exhibit B** a screenshot composition created from video footage previously produced by Defendants in Case No. 22-cv-1172-RJD. Also see **Exhibit C**.

The exhibit is offered solely as a demonstrative aid.

The composition identifies the locations of:

- Plaintiff;
- Witness Diego Montes;
- Witness James Patton;
- Cell E-204;
- Cell E-201.

The exhibit demonstrates how the missing January 1, 2022 video would likely have corroborated witness observations, including:

- the locations of witnesses;
- the duration of the shakedown;
- the movements of Officers North and Freeman;
- the movements of Supervisor Yingling;
- events occurring before and after the search.

The exhibit further demonstrates why the missing video evidence is material to Plaintiff's retaliation claim.

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

**A.** Grant Plaintiff leave to exceed the discovery limits contained in the Scheduling Order;

**B.** Order Defendants to answer Plaintiff's additional interrogatories and requests for admission that were denied solely on numerical-limit grounds;

**C.** Order Defendants to provide supplemental responses regarding all video footage relating to the January 1, 2022 shakedown, including:

- whether footage existed;
- retention periods;
- preservation efforts;
- destruction dates;
- persons responsible for preservation decisions;
- persons responsible for destruction decisions;

**D.** Order Defendants to produce all responsive:

- incident reports;
- shakedown reports;
- investigative reports;
- supervisor reports;
- notes;
- memoranda;
- Inmate Operations Log Entries;
- preservation records;
- destruction records;

relating to the January 1, 2022 incident;

**E.** Award any additional relief deemed appropriate and just.

Respectfully submitted,

**/s/Jorge Luis Leal**
Plaintiff, Pro Se
1286 Wind Crest Drive
Union City, TN 38261

Execution Date: May 31, 2026

**CERTIFICATE OF SERVICE**

I certify that on this 1ˢᵗ day of June, 2026, I served a copy of the foregoing **PLAINTIFF'S MOTION FOR LEAVE TO EXCEED DISCOVERY LIMITS FOR GOOD CAUSE AND MOTION TO COMPEL SUPPLEMENTAL DISCOVERY RESPONSES** and **Exhibit A, Exhibit B, Exhibit C, Exhibit D,** and **Exhibit E** upon counsel for Defendants by mail.

/s/ Jorge Luis Leal
JORGE LUIS LEAL

**DECLARATION OF JORGE LEAL (Retaliation Case Discovery Extensions of Time)**

I, Jorge Leal, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Plaintiff in this action and have personal knowledge of the matters stated herein.
2. On or about February 4, 2026, Defendants received Plaintiff's First Set of Interrogatories, Requests for Production, and Requests to Admit.
3. Defendants' discovery responses were originally due on March 6, 2026.
4. On March 5, 2026, Defendants requested an extension until March 25, 2026 because defense counsel needed additional time to prepare responses.
5. The same day, I agreed to the requested extension.
6. Defendants failed to fully respond by March 25, 2026.
7. On April 1, 2026, I participated in a phone call with defense counsel Andrew Kim.
8. During that call, Mr. Kim asked me to agree to jointly amend the Scheduling and Discovery Order because Defendants needed more time to produce discovery and conduct depositions.
9. I agreed to cooperate.
10. On April 7, 2026, I emailed Defendants asking when I should expect the remaining discovery because Defendants had only provided responses to Requests to Admit.
11. On April 9, 2026, I again followed up regarding the outstanding discovery.
12. On April 10, 2026, Defendants emailed me a draft Joint Motion to Amend Scheduling and Discovery Order.
13. I approved the filing of the joint motion.
14. Also on April 10, 2026, Defendants informed me in writing that they were still communicating with the jail and gathering records needed to respond to discovery.
15. On April 13, 2026, the parties filed the Joint Motion to Amend Scheduling and Discovery Order.
16. On April 14, 2026, the Court granted the Joint Motion. (ECF No. 38).
17. On April 17, 2026, after I again inquired about the outstanding discovery, Defendants requested another extension until May 4, 2026.
18. Defendants stated they had only recently received records from the jail.
19. I agreed to the extension but clearly informed Defendants in writing that May 4, 2026 would be the final extension I was willing to grant.
20. I also informed Defendants that if they failed to fully respond by May 4, 2026, I would seek relief from the Court, including filing a motion to compel and requesting sanctions if necessary.
21. On May 6, 2026, Defendants informed me that responses to Requests for Production had allegedly been mailed on May 5, 2026.
22. Defendants also requested another extension until May 15, 2026 to answer Plaintiff's interrogatories.
23. As of the filing of this motion, Defendants still have not fully responded to Plaintiff's written discovery.
24. I have acted in good faith and repeatedly cooperated with Defendants throughout discovery.

1

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of May, 2026.

/s/ Jorge Luis Leal
JORGE LUIS LEAL

# Exhibit B

## Screenshot Composition for Retaliatory Shakedown



*Screenshot taken from video pertaining to the failure-to-protect claim, *Leal v. Pinkerton, et al.*, No. 3:22-cv-01172-RJD. Screenshot composition done by Jorge Luis Leal on 5/30/26. See "Declaration of Jorge Luis Leal (Screenshot Composition for Retaliatory Shakedown)" for more details.

Exhibit C

# Declaration of Jorge Luis Leal
# (Screenshot Composition for Retaliatory Shakedown)

I, Jorge Luis Leal, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Plaintiff in the civil actions captioned *Leal v. Pinkerton, et al.*, Case No. 3:22-cv-01172-RJD, and *Leal v. Pinkerton, et al.*, Case No. 3:24-cv-00105-NJR, pending in the United States District Court for the Southern District of Illinois.
2. On May 30, 2026, I created the attached screenshot composition titled **"Screenshot Composition for Retaliatory Shakedown."**
3. The screenshot used in this composition was taken from video footage produced by Defendants during discovery in *Leal v. Pinkerton, et al.*, Case No. 3:22-cv-01172-RJD.
4. I added labels and directional arrows to the screenshot for demonstrative purposes in order to identify the locations of various inmates and cells relevant to the retaliatory shakedown that occurred on January 1, 2022.
5. Specifically, the composition identifies:
    o My location, Jorge Luis Leal ("Leal");
    o The location of witness inmate Diego Montes ("Montes");
    o The location of witness inmate James Patton ("Patton");
    o Cell E-204, where I was housed;
    o Cell E-201, where inmates James Monroe and David Blue were housed.
6. The red arrows identify the locations where Leal, Montes, and Patton were positioned during the January 1, 2022 shakedown conducted by Officer North, Officer Freeman, and Supervisor Yingling, as described in my Step 4 Grievance Support Documentation and in the witness statements provided by Montes and Patton.
7. The white arrow extending from my position toward Montes illustrates how I was able to observe Montes looking toward Cell E-204 through the reflection of the windows located in front of him. Montes later stated that he observed Officer North going through my commissary bags and documents while the shakedown was taking place.
8. The white arrow extending from my position toward Patton illustrates how I was able to observe Patton walking near and looking into Cell E-204 during the shakedown. Patton later stated that he observed Officer North holding papers and appearing to read documents while inside my cell.
9. The composition also demonstrates the relative locations of Cells E-204 and E-201 and their proximity to each other.
10. Had Defendants preserved and produced the video footage from January 1, 2022 relating to the retaliatory shakedown, the video would have shown facts relevant to my claims, including but not limited to:

- When Officer North, Officer Freeman, and Supervisor Yingling entered Cell E-204;
- When they exited Cell E-204;
- The length of time spent searching Cell E-204;
- Whether Officer North entered the cell carrying papers or documents;

1

- Whether any papers or documents were in the possession of officers when they exited the cell;
- The locations of Montes and Patton during the shakedown;
- Whether Patton approached and looked into Cell E-204 during the search;
- Whether Montes was positioned in a location from which he could observe the search through the window reflections;
- When Montes and I were locked inside Cell E-204 after the search;
- The duration and circumstances of the subsequent shakedown conducted in Cell E-201.

11. The attached screenshot composition is offered solely as a demonstrative exhibit to assist the Court in understanding the positions of the individuals involved and the significance of the missing video evidence referenced throughout my grievances and supporting documentation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 30th day of May, 2026.

Respectfully submitted,

**/s/Jorge Luis Leal**
Plaintiff, Pro Se

2

**Exhibit D**

## Williamson County Jail

## Inmate Grievance/complaint form

Step # 4                    Date & Time: 1-5-22 @ 2130

*Officer is to fill out the time this form is requested and given to inmate*

Inmate Name: Jorge Leal        Wing E    Date 1/5/22.

Complaint:
Lt. Hawns replied to Step 3 requesting that I provide documentation to support the fact that officer North purposely read my legal and confidential documents during a shakedown she conducted in my cell on 11/1/22. See attached labeled "Step 4 Grievance support documentation"

Inmate Signature: _____

Officer's action: Step 4 is referred to the Sheriff

Officer Signature, Date & Time: _____ WC 86
1/6/22 @ 0930

Supervisor's action: _____

Supervisor Signature, Date & Time: 01/07/2022  1000

Administration Action:
I have read all of your statements that you provided with your step 4 grievance. Officer North, Freeman, and Yingling completed a shakedown according to the jail standards and policies. The statements that you provided had the exact statements in them which leads me to believe The persons making the statements were coached as to making the statements. A shakedown does not have a time limit and anything in the cell may be searched and reviewed for criminal activity.

Administration Signature: _____  WC 83

Step 4 Grievance                           80 1
Support Documentation

Lt. Mauers replied to my step 3 totally missing the whole point of my complaint. He claims that, "Inmates don't dictate how long a shakedown lasts. Staff may go through any and all items while doing a search. Just because something is labeled "legal" doesn't make it exempt to searches" He is absolutely right about these three statements, however, this is not what my complaint is about. I am not claiming officers can not search certain items nor that something labeled "illegal" is exempt from being searched. I am also not claiming that inmates dictate how long shakedowns last. I am claiming, however, that in the totality of the circumstances, the relative time that the officers spent "shaking-down" my cell is at the minimum "inconsistent" to what officer Norsu claims are found in my cell. Logically things do not add up.

SD 2

Lt. Havens also states that, "Step 1 answer asked for proof, but nothing indicated. You state it's a fact. Provide documentation to support your claim to be factual." First, it is an impossible task to give proof as the jail purposely limits us to six lines of space available for inmates to write "detail" about our complaints. This is clearly unconstitutional. Strangely and to your convenience, staff is allowed to write as much detail as they want as shown in officer's North's response to my step 2. Significantly, Lt. Havens ignored that part of my complaint in his response to my step 3. In any event, Lt. Havens requested documentation to support my complaint. The following are the facts that support my complaint and importantly you will have the burden to disprove in civil litigation:

On 1/11/22 at around 4pm David Blue, James Monroe, Diego Montes (my

SD 3

cellmate) and I got together in my cell (E204)" to cook, something we did from time to time. Monroe and Blue (from E201) brought items from their cell to mine. Staff clearly noticed this movement as well as/ when we were all in my cell cooking and eating. This was the reason my cell and E201 were shaken down and not as part of a routinely random shakedown as officer North states in her response to my step 2. We were locked down at 5:30 pm. Sometime after 6 pm as my cellmate and I were sleeping, Officer North and Freeman woke us up to shake us down. My cellmate went and sat at one of the tables in front of the TV and I sat at the kiosk closer to the door. The shakedown lasted at least 10 to 15 minutes (unusual). During that time, I observed inmate, James Patton, walk up and down the top tier at least two times to

SD 4

look into my cell to see what the officers were doing. Also, I observed Supervisor Yingling come into the unit running, up the stairs, and into my cell towards the end of the shakedown. Both officer North and Supervisor Yingling came out of my cell, down the stairs and out of the unit. As they were coming out of the unit, I heard officer North asking supervisor Yingling what she was going to do with what she found and he replied that he was going to pass it on. Officer North also said something to my cellmate which I did not hear.

My cellmate and I went into our cell to see the "mess" they had left. As soon as we went in, they locked down the door on us. Meanwhile, they came back into the unit and went to shakedown E-201 (Monroe and Blue). They, however, were not put in

SO 5

lockdown even though they removed a similar amount of trash from their cell.

It is inevitable to conclude that my legal and confidential documents were purposely read. First thing I noticed as I walk back into my cell is that my legal documents were not in the place I left them. That told me they had looked thru my envelope. But the most most valuable piece of evidence was left on my cellmate's mattress. On my cellmate's mattress were my documents out of the envelope that was labeled "Legal Mail Jorge Leal WCJ." These documents were all out of order and were clearly read. Unaccidently, officer North read and showed Yingling these documents because they contained valuable info pertaining to the many violations the jail, staff, and administration have committed on my person. Undoubtly, she

SD 6

was concerned, alerted, and intrigued by what she read.

As for officer North's claims that she called Supervisor Yingling to come take note of the 20 plus Tylenol and Ibuprofen I had in my bag is at the minimum absurd excuses to cover her unconstitutional violation. She claims that she became alerted because I was asking the nurse for "free" Ibuprofen. For the record, the nurse and doctor both ordered for Ibuprofen to be given to me due to a tooth infection. Besides, whatever meds I order thru commissary is irrelevant to what the nurse gives me. Importantly, there is no jail policy that says that I have a limit on the amount of Tylenol and Ibuprofen I can order from commissary. So, why didn't Officer North and Freeman just take note of the meds or take the meds

SD 7

to officer Yingling? Why did they talk to me about that concern? The fact is that was not the concern. The concern were my confidential documents that she became intrigued by because of info they contained and she didn't know how to deal with them other then to have the supervisor look at them.

Also, to support my claim, I have attached two statements by two inmate witnesses who saw everything first hand. I also encourage you to keep the video footage for that day as it may be relevant for future civil litigation.

Respectfully,

#125097
(E 204)

January 5, 2022                                    Diego Montes

                                                        SD-8


on January 1, 2022, officer North and officer Freeman conducted a shake-down on my cell E204 as I was downstairs sitting on the bench, I could see on the reflection of the window and saw that officer North was going through commisary bags and documents that are part of my cellmates Jorge Leal, it was a very long an unusuall shake-down, and it did not seem random, due to us cooking food on trays, they had, had to see us bringing trays back and forth from E204 - E201, I did not like the fact that officer North says we had alot Jail food and spoiled milks, due to the fact it was only 1 tray with jail food containing bologni and oranges and only 1 carton full of milk, from that same dinner we-had recieved on January 1, 2022, while being shaken down looking at the reflection, I witness officer ylingling going up to my cell E-204 to were officer North and officer freeman were shaken us down, after 15 minutes of shaken us down, my cellmate Jorge-leal and me Diego Montes went back up to our cell, I saw my cellmates legal paperwork on my bed out of their envelopes, after I Diego montes closed the door behind me, officer ylingling decided to lock us down for no reason, it wasn't up to when I saw officer North walked by my cell when I asked "why we were on lock down for" then I saw officer north reach for her radiou to tell officer ylingling to unlock E-204

James Patton   5D-9

1-5-22

On January 1, 2022 after supper lockdown I witnessed officer North and officer Freeman conduct a "Random" shake down of Jorge leals cell "E-204".

During this shake down as I was walking by E-204 I witnessed officer North reading papers in E-204 that she did not have before she entered the cell, As I walked by a second time I saw them same papers sitting on the bottom bunk.

Additionally, as I was sitting in my cell "E-203" I over heard officer North radio another officer. As I was looking out my cell window I witnessed officer Freeman hold open cell 204 Door and Sgt. Yingling running up the stairs towards cell 204.

All together the entire event took up about 15 minutes which was unusually long for a normal shake down. then they all left with a bag of trash. Once they left Jorge leal was locked in his cell without notice for about 5 minutes until Inmate Alann "Jorge leal Cellmate" inquired about the

Exhibit E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JORGE LUIS LEAL,                )
                                )
            Plaintiff,           )
                                )
    v.                          )        Case No. 2024-CV-00105-NJR
                                )
PINKERTON, et. al.              )
                                )
            Defendants.          )

## DEFENDANTS NORTH, FREEMAN, AND YINGLING'S RESPONSE
## TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSION

Defendants, Sommer North, Shawn Freeman and Jonathan Yingling, by and through their

attorney, Bhairav Radia, submit the following responses to Plaintiff's First Set of Requests to

Admit:

## REQUESTS FOR ADMISSION

Admit or deny the following:

1.    Plaintiff filed grievances prior to January 1, 2022.

**RESPONSE: Admitted.**

2.    You were aware of those grievances.

**RESPONSE: Defendants deny that they were aware of all the grievances submitted by**

**plaintiff before January 1, 2022.**

3.    You understood grievances may lead to litigation.

**RESPONSE: Denied.**

4.    Plaintiff engaged in protected First Amendment activity.

**RESPONSE: Admitted to the extent the activity plaintiff is referring to is his submitting of**

**grievances.**

5.    Plaintiff's cell was searched on January 1, 2022.

**RESPONSE: Admitted.**

6.    Legal documents were present in Plaintiff's cell.

**RESPONSE: Defendants admit legal documents may have been present in plaintiff's cell.**

7.    Legal documents were examined by staff.

**RESPONSE: Denied.**

8.    Reading inmate legal documents is restricted by policy.

**RESPONSE: Admitted. Defendants deny reading plaintiff's legal documents.**

9.    No contraband justified reading Plaintiff's legal papers.

**RESPONSE: Objection: Confusing, vague. Defendants deny reading plaintiff's legal papers.**

10.    Plaintiff was not written up for contraband related to those documents.

**RESPONSE: Objection: vague. Defendants admit plaintiff was not disciplined for having legal documents.**

11.    An inventory list should have been created.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

12.    Either no list exists or it cannot be located.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

13.    Staff are trained not to read legal documents.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

14.    Opening legal mail outside an inmate's presence violates policy.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

15.    Plaintiff complained about interference with legal materials.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

16.    Jail staff denied Plaintiff copies of grievances prior to this lawsuit.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

17.    Grievance data was deleted or became inaccessible after a system update.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

18.    Plaintiff requested preservation of grievance records.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

19. Defendants had a duty to preserve evidence once litigation was anticipated.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

20. No litigation hold was issued before records were lost.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

21. Retaliation against inmates for filing grievances is prohibited.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

22. Searching an inmate because of grievances would violate policy.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

23. Plaintiff suffered harm when his legal documents were interfered with.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

24. Plaintiff's legal materials were never returned.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

25.    There is no legitimate penological justification for reading attorney-client materials.

**RESPONSE: Defendants object to this request because it exceeds the limit of 10 requests for admission that the court has allowed each party. See Scheduling and Discovery Order, Doc. #25.**

Respectfully submitted,

**SOMMER NORTH,**
**SHAWN FREEMAN,**
**JONATHAN YINGLING,**

By:    *s/ Bhairav Radia*
Bhairav Radia #6293600
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, IL 60062
Phone: 847-291-0200
Email: bradia@ifmklaw.com

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JORGE LUIS LEAL,                          )
                                          )
      Plaintiff,                      )
                                          )
v.                                        )    Case No. 2024-CV-00105-NJR
                                          )
PINKERTON, et. al.                        )
                                          )
      Defendants.                     )

## CERTIFICATE OF SERVICE

I certify that on **March 25, 2026**, I caused the foregoing **Defendants' Response to Plaintiff's First Requests for Admission** to be emailed and mailed by U.S. postal service by having same placed in a sealed envelope with proper postage in the U.S. Mail receptacle located at 650 Dundee Road, Northbrook, Illinois, and addressed to the following:

Jorge Luis Leal, 14448-025
1286 Wind Crest Drive
Union City, TN 38261
jorgelleal@myyahoo.com

By:    *s/ Bhairav Radia*
        Bhairav Radia, #6293600

6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JORGE LUIS LEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2024-CV-00105-NJR |
| | ) | |
| PINKERTON, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SHAWN FREEMAN'S ANSWERS TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant, Shawn Freeman, by and through one of his attorneys, hereby submits the following answers to Plaintiff's First Set of Interrogatories.

1.      State your full name, current position, employer, and last known work address.

**ANSWER:      Shawn Freeman. Officer Freeman is currently employed as a Corrections Officer for the Williamson County Jail, 404 North Van Buren Street, Marion, IL 62959.**

2.      Describe in detail your duties, responsibilities, and authority at the jail from July 1, 2021 through March 31, 2022, including but not limited to your role in cell searches, shakedowns, handling inmate legal materials, supervising officers, responding to grievances, and participating in any investigations. Identify all written policies, post orders, training materials, or directives that governed these duties.

**ANSWER:      Officer Freeman served as a Corrections Officer from November 2021 through March 31, 2022. As a Corrections Officer, Officer Freeman's duties included, but were not limited to, maintaining the safety of the jail, supervising inmates, monitoring inmate activity, and preparing reports.**

1

3. Describe all training you have received regarding inmate legal mail, legal documents, attorney-client privilege, and First Amendment rights.

**ANSWER:** **Objection: Irrelevant and disproportionate to the needs of the case. Officer Freeman's training is not at issue in determining Plaintiff's claims in this case.**

4. Identify every policy, custom, or practice governing the handling of inmate legal materials during cell searches.

**ANSWER:** **Objection: Irrelevant, because whether any Jail policy, procedure, guideline, rule, or protocol was violated is immaterial to whether Plaintiff's constitutional rights were violated. Subject to the objection, see the Jail rules previously produced (bates-numbered WC 1198-1208).**

5. State whether you participated in or were present for any shakedown conducted on January 1, 2022. and describe your role.

**ANSWER:** **Officer Freeman does not recall participating in or being present for any shakedown conducted on January 1, 2022. Accordingly, Officer Freeman is unable to describe any role in such a shakedown at this time.**

6. Identify all persons who planned, ordered, supervised, or participated in that shakedown.

**ANSWER:** **Objection: Assumes facts not in evidence. Subject to and without waiving the objection, Officer Freeman does not recall participating in or being present for any shakedown conducted on January 1, 2022. Accordingly, Officer Freeman is unable to describe any role in such a shakedown at this time.**

7. Explain the reason for the January 1, 2022 shakedown and identify all documents supporting that reason.

**ANSWER:** **Objection: Assumes facts not in evidence. Subject to and without waiving the objection, Officer Freeman does not recall participating in or being present for any shakedown conducted on January 1, 2022. Accordingly, Officer Freeman is unable to describe any role in such a shakedown at this time.**

8.     State whether Plaintiff was specifically targeted for a search and explain the basis for that decision.

**ANSWER:** **Officer Freeman does not recall participating in or being present for any shakedown conducted on January 1, 2022. Accordingly, Officer Freeman is unable to provide any information responsive to this interrogatory at this time.**

9.     Identify all contraband allegedly recovered from Plaintiff's cell.

**ANSWER:** **Officer Freeman does not recall participating in or being present for any shakedown conducted on January 1, 2022. Accordingly, Officer Freeman is unable to identify any contraband allegedly recovered from Plaintiff's cell.**

10.    Describe in detail every item removed from Plaintiff's cell, including legal papers.

**ANSWER:** **Officer Freeman does not recall participating in or being present for any shakedown conducted on January 1, 2022. Accordingly, Officer Freeman is unable to provide information on what items, if any, were allegedly removed from Plaintiff's cell.**

11.    State whether any legal documents belonging to Plaintiff were reviewed, read, copied, photographed, or retained.

**ANSWER:** **Officer Freeman does not recall reviewing, reading, copying, photographing, or retaining any legal documents belonging to Plaintiff. Accordingly, Officer**

3

**Freeman is unable to provide further information regarding any such documents at this time.**

12.   Identify every person who accessed Plaintiff's legal documents.

**ANSWER:    Objection: Ambiguous ("accessed") and assumes facts not in evidence. Subject to the objections, Officer Freeman does not recall accessing Plaintiff's legal documents and does not know of any person who reviewed, read, copied, photographed, or retained Plaintiff's legal documents.**

13.   Describe what was done with Plaintiff's legal documents after they were removed from the cell.

**ANSWER:    Objection: Assumes facts not in evidence. Specifically, the Interrogatory assumes that Plaintiff's legal documents were removed from his cell. No records or grievances support this assertion, and Plaintiff has not even alleged facts establishing that such documents were removed from his cell. An interrogatory that is premised on an incorrect or unsupported factual assumption does not require a substantive response. *See* Fed. R. Civ. P. 33(b)(2)-(4).**

14.   State whether any inventory list was created and identify its location.

**ANSWER:    Officer Freeman does not recall participating in or being present for any shakedown conducted on January 1, 2022. Accordingly, Officer Freeman is unable to state whether any inventory list was created.**

15.   Identify all incident reports, shakedown reports, logbooks, or memoranda relating to the search.

**ANSWER:** **None other than the records produced with Defendants' Initial Disclosures and Defendants' Response to Plaintiff's Request for Production.**

16.    State whether you were aware that Plaintiff had filed grievances concerning staff misconduct prior to January 1, 2022.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

17.    State whether you were aware that Plaintiff intended to pursue litigation against jail staff.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

18.    Identify all grievances authored by Plaintiff that you reviewed prior to January 1, 2022.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

19.    Describe any conversations you had with other staff regarding Plaintiff before the shakedown.

5

ANSWER:    **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

20.    State whether Plaintiff was ever characterized as a "problem inmate," "litigious," or similar.

ANSWER:    **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

21.    Identify all complaints made by Plaintiff about staff prior to and after the shakedown, including complaints regarding interference with legal mail or legal materials.

ANSWER:    **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

22.    Identify every complaint, grievance, internal report, or allegation made by any inmate against any jail staff member within the past five years concerning the mishandling, reading, confiscation, delay, destruction, or interference with legal mail or legal documents.

ANSWER:    **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

6

23.    Describe any discipline imposed on staff for mishandling inmate legal materials within the past five years.

**ANSWER:    Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

24.    State whether any video footage captured the January 1, 2022 shakedown and identify where it is stored.

**ANSWER:    Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

25.    Explain the jail's policy regarding opening legal mail outside the inmate's presence.

**ANSWER:    Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

26.    Describe your knowledge of the August 2021 Department of Corrections shakedown, including whether Plaintiff's legal materials were searched, confiscated, or reviewed.

**ANSWER:    Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

7

27.    Describe your knowledge of any incident in early 2022 involving Officer Gibbs and the mishandling of Plaintiff's legal mail.

**ANSWER:**    **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

28.    Describe your knowledge of any incident in which Officer Foster read or reviewed Plaintiff's legal documents that had been provided solely for copying.

**ANSWER:**    **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

29.    Identify all facts supporting your denial of wrongdoing in this matter.

**ANSWER:**    **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Officer Freeman is not required to answer this interrogatory.**

Respectfully,

**SHAWN FREEMAN**

By:    *s/ Hoseuk Kim*
Hoseuk Kim (Andrew) #6349370
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, IL 60062
Phone: 847-291-0200

Email: akim@ifmklaw.com

UNITED STATES DISTRICT COURT )
                             )
SOUTHERN DISTRICT OF ILLINOIS )

Leal v. Pemberton, et al

2024-cv-00105-NJR

## DECLARATION OF SHAWN FREEMAN

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing, Defendant Shawn Freeman's Answers to Plaintiff's First Set of Interrogatories (Interrogatory Nos. 1-29), are true and correct.

Date: 5-18-26

354

Shawn Freeman

Executed in Williamson County, Illinois

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JORGE LUIS LEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2024-CV-00105-NJR |
| | ) | |
| PINKERTON, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

I certify that on **May 18, 2026**, I caused the foregoing **Defendant Shawn Freeman's Answers to Plaintiff's First Set of Interrogatories** to be mailed by U.S. postal service by having same placed in a sealed envelope with proper postage in the U.S. Mail receptacle located at 650 Dundee Road, Northbrook, Illinois, and addressed to the following:

Jorge Luis Leal, 14448-025
1286 Wind Crest Drive
Union City, TN 38261
jorgelleal@myyahoo.com

By:    *s/ Hoseuk Kim*
Hoseuk Kim (Andrew) #6349370

11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JORGE LUIS LEAL,                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      Case No. 2024-CV-00105-NJR
                                        )
PINKERTON, et. al.                      )
                                        )
            Defendants.                 )

## DEFENDANT SOMMER NORTH'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, Sommer North, by and through one of her attorneys, hereby submits the following answers to Plaintiff's First Set of Interrogatories.

1.     State your full name, current position, employer, and last known work address.

**ANSWER:     Sommer North. Lt. North is currently employed as a Lieutenant for the Williamson County Jail, 404 North Van Buren Street, Marion, IL 62959.**

2.     Describe in detail your duties, responsibilities, and authority at the jail from July 1, 2021 through March 31, 2022, including but not limited to your role in cell searches, shakedowns, handling inmate legal materials, supervising officers, responding to grievances, and participating in any investigations. Identify all written policies, post orders, training materials, or directives that governed these duties.

**ANSWER:     Lt. North served as a Corrections Officer from July 1, 2021 through March 31, 2022. As a Corrections Officer, Lt. North's duties included, but were not limited to, maintaining the safety of the jail, supervising inmates, monitoring inmate activity, and preparing reports.**

1

3.      Describe all training you have received regarding inmate legal mail, legal documents, attorney-client privilege, and First Amendment rights.

**ANSWER:**      **Objection: Irrelevant and disproportionate to the needs of the case. Lt. North's training is not at issue in determining Plaintiff's claims in this case.**

4.      Identify every policy, custom, or practice governing the handling of inmate legal materials during cell searches.

**ANSWER:**      **Objection: Irrelevant, because whether any Jail policy, procedure, guideline, rule, or protocol was violated is immaterial to whether Plaintiff's constitutional rights were violated. Subject to and without waiving the objection, see the Jail rules previously produced (bates-numbered WC 1198-1208).**

5.      State whether you participated in or were present for any shakedown conducted on January 1, 2022, and describe your role.

**ANSWER:**      **Lt. North conducted two shakedowns on January 1, 2022, during which she searched for and removed any contraband from cells.**

6.      Identify all persons who planned, ordered, supervised, or participated in that shakedown.

**ANSWER:**      **Objection: Assumes facts not in evidence. Subject to and without waiving the objection, on January 1, 2022, Lt. North noticed substantial trash in Plaintiff's cell in violation of the Inmate Handbook and initiated a shakedown of the cell. During the shakedown, Lt. North identified an excess of number of Ibuprofen packages, prompting her to request supervisory assistance. Corporal Yingling**

2

**thereafter supervised the shakedown. Lt. North is not aware of any other person who planned, ordered, supervised, or participated in the shakedown.**

7.    Explain the reason for the January 1, 2022 shakedown and identify all documents supporting that reason.

**ANSWER:**    **Objection: Assumes facts not in evidence. Subject to and without waiving the objection, on January 1, 2022, Lt. North noticed substantial trash in Plaintiff's cell in violation of the Inmate Handbook and initiated a shakedown for the general purposes of maintaining inmate and jail personnel safety and removing any potential contraband.**

8.    State whether Plaintiff was specifically targeted for a search and explain the basis for that decision.

**ANSWER:**    **Objection: Assumes facts not in evidence and ambiguous ("targeted"). Subject to and without waiving the objections, the answer is no. Lt. North noticed substantial trash in Plaintiff's cell in violation of the rules set forth in the Inmate Handbook and initiated a shakedown for the general purposes of maintaining inmate and jail personnel safety and removing any potential contraband.**

9.    Identify all contraband allegedly recovered from Plaintiff's cell.

**ANSWER:**    **Recovered contraband from the shakedown of Plaintiff's cell on January 1, 2022 included excessive packages of Ibuprofen, excessive amounts of leftover jail food, and cartons of spoiled milk.**

10.    Describe in detail every item removed from Plaintiff's cell, including legal papers.

3

**ANSWER:**    **Objection: Assumes facts not in evidence. Subject to and without waiving the objection the objection, the answer is: In addition to the contraband referred to in Lt. North's Answer to Interrogatory No. 9, a clear trash bag of trash was removed. No legal papers were removed from Plaintiff's cell.**

11.    State whether any legal documents belonging to Plaintiff were reviewed, read, copied, photographed, or retained.

**ANSWER:**    **No, Lt. North did not review, read, copy, photograph, or retain Plaintiff's legal documents.**

12.    Identify every person who accessed Plaintiff's legal documents.

**ANSWER:**    **Objection: Ambiguous ("accessed") and assumes facts not in evidence. Subject to and without waiving the objection, Lt. North does not know of any person who reviewed, read, copied, photographed, or retained Plaintiff's legal documents.**

13.    Describe what was done with Plaintiff's legal documents after they were removed from the cell.

**ANSWER:**    **Objection: Assumes facts not in evidence. Specifically, the Interrogatory assumes that Plaintiff's legal documents were removed from his cell. No records or grievances support this assertion, and Plaintiff has not even alleged facts establishing that such documents were removed from his cell. An interrogatory that is premised on an incorrect or unsupported factual assumption does not require a substantive response. *See* Fed. R. Civ. P. 33(b)(2)-(4).**

14.    State whether any inventory list was created and identify its location.

4

**ANSWER:** **Lt. North did not create any inventory list. Contraband recovered from the shakedown of Plaintiff's cell on January 1, 2022 included excessive packages of Ibuprofen, excessive amounts of leftover jail food, and cartons of spoiled milks. A clear trash bag of trash was also removed from Plaintiff's cell.**

15. Identify all incident reports, shakedown reports, logbooks, or memoranda relating to the search.

**ANSWER:** **None other than the records produced with Defendants' Initial Disclosures and Defendants' Response to Plaintiff's Request for Production.**

16. State whether you were aware that Plaintiff had filed grievances concerning staff misconduct prior to January 1, 2022.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

17. State whether you were aware that Plaintiff intended to pursue litigation against jail staff.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

18. Identify all grievances authored by Plaintiff that you reviewed prior to January 1, 2022.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

19. Describe any conversations you had with other staff regarding Plaintiff before the shakedown.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

20. State whether Plaintiff was ever characterized as a "problem inmate," "litigious," or similar.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

21. Identify all complaints made by Plaintiff about staff prior to and after the shakedown, including complaints regarding interference with legal mail or legal materials.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

22.     Identify every complaint, grievance, internal report, or allegation made by any inmate against any jail staff member within the past five years concerning the mishandling, reading, confiscation, delay, destruction, or interference with legal mail or legal documents.

**ANSWER:**     **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

23.     Describe any discipline imposed on staff for mishandling inmate legal materials within the past five years.

**ANSWER:**     **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

24.     State whether any video footage captured the January 1, 2022 shakedown and identify where it is stored.

**ANSWER:**     **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

25.     Explain the jail's policy regarding opening legal mail outside the inmate's presence.

**ANSWER:**     **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has**

7

not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.

26.     Describe your knowledge of the August 2021 Department of Corrections shakedown, including whether Plaintiff's legal materials were searched, confiscated, or reviewed.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

27.     Describe your knowledge of any incident in early 2022 involving Officer Gibbs and the mishandling of Plaintiff's legal mail.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

28.     Describe your knowledge of any incident in which Officer Foster read or reviewed Plaintiff's legal documents that had been provided solely for copying.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.**

29.     Identify all facts supporting your denial of wrongdoing in this matter.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has**

8

not obtained approval of the Court to serve additional interrogatories, so Lt. North is not required to answer this interrogatory.

Respectfully,

**SOMMER NORTH**

By:    _s/ Hoseuk Kim_
       Hoseuk Kim (Andrew) #6349370
       IFMK Law, Ltd.
       650 Dundee Road, Suite 475
       Northbrook, IL 60062
       Phone: 847-291-0200
       Email: akim@ifmklaw.com

9

| UNITED STATES DISTRICT COURT | ) | *Leal v. Pinkerton, et al.* |
| | ) | |
| SOUTHERN DISTRICT OF ILLINOIS | ) | 2024-cv-00105-NJR |

## <u>DECLARATION OF SOMMER NORTH</u>

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing, **Defendant Sommer North's Answers to Plaintiff's First Set of Interrogatories** (Interrogatory Nos. 1-29), are true and correct.

Date: *May 18, 2026*

Sommer North

Executed in Williamson County, Illinois

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JORGE LUIS LEAL,                          )
                                          )
            Plaintiff,                    )
                                          )
    v.                                    )        Case No. 2024-CV-00105-NJR
                                          )
PINKERTON, et. al.                        )
                                          )
            Defendants.                   )

## CERTIFICATE OF SERVICE

I certify that on **May 18, 2026**, I caused the foregoing **Defendant Sommer North's Answers to Plaintiff's First Set of Interrogatories** to be mailed by U.S. postal service by having same placed in a sealed envelope with proper postage in the U.S. Mail receptacle located at 650 Dundee Road, Northbrook, Illinois, and addressed to the following:

Jorge Luis Leal, 14448-025
1286 Wind Crest Drive
Union City, TN 38261
jorgelleal@myyahoo.com

By:    *s/ Hoseuk Kim*
       Hoseuk Kim (Andrew) #6349370

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JORGE LUIS LEAL.,                      )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        Case No. 2024-CV-00105-NJR
                                       )
PINKERTON, et. al.                     )
                                       )
        Defendants.                    )

### DEFENDANT JONATHAN YINGLING'S ANSWERS TO
### PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, Jonathan Yingling, by and through one of his attorneys, hereby submits the following answers to Plaintiff's First Set of Interrogatories.

1.    State your full name, current position, employer, and last known work address.

**ANSWER:**    **Jonathan Yingling. Corporal Yingling is currently employed as a Corporal of Transport for the Williamson County Jail, 404 North Van Buren Street, Marion, IL 62959.**

2.    Describe in detail your duties, responsibilities, and authority at the jail from July 1, 2021 through March 31, 2022, including but not limited to your role in cell searches, shakedowns, handling inmate legal materials, supervising officers, responding to grievances, and participating in any investigations. Identify all written policies, post orders, training materials, or directives that governed these duties.

**ANSWER:**    **Corporal Yingling served as a Corrections Officer from July 1, 2021 through March 31, 2022. As a Corrections Officer, Corporal Yingling's duties included, but were not limited to, maintaining the safety of the jail, supervising inmates, monitoring inmate activity, and preparing reports.**

1

3.      Describe all training you have received regarding inmate legal mail, legal documents, attorney-client privilege, and First Amendment rights.

**ANSWER:**      **Objection: Irrelevant and disproportionate to the needs of the case. Corporal Yingling's training is not at issue in determining Plaintiff's claims in this case.**

4.      Identify every policy, custom, or practice governing the handling of inmate legal materials during cell searches.

**ANSWER:**      **Objection: Irrelevant, because whether any Jail policy, procedure, guideline, rule, or protocol was violated is immaterial to whether Plaintiff's constitutional rights were violated. Subject to and without waiving the objection, see the Jail rules previously produced (bates-numbered WC 1198-1208).**

5.      State whether you participated in or were present for any shakedown conducted on January 1, 2022, and describe your role.

**ANSWER:**      **Corporal Yingling was the Shift Supervisor during the January 1, 2022 shakedown and became involved after a supervisor was requested during the shakedown of Plaintiff's cell.**

6.      Identify all persons who planned, ordered, supervised, or participated in that shakedown.

**ANSWER:**      **Objection: Assumes facts not in evidence. Subject to and without waiving the objection, on January 1, 2022, Lt. North noticed substantial trash in Plaintiff's cell in violation of the Inmate Handbook and initiated a shakedown of the cell. During the shakedown, Lt. North identified an excess of number of Ibuprofen packages, prompting her to request supervisory assistance. Corporal Yingling**

2

thereafter supervised the shakedown. Corporal Yingling is not aware of any other person who planned, ordered, supervised, or participated in the shakedown.

7.    Explain the reason for the January 1, 2022 shakedown and identify all documents supporting that reason.

**ANSWER:**    **Objection: Assumes facts not in evidence. Subject to and without waiving the objection, on January 1, 2022, Lt. North noticed substantial trash in Plaintiff's cell in violation of the Inmate Handbook and initiated a shakedown for the general purposes of maintaining inmate and jail personnel safety and removing any potential contraband.**

8.    State whether Plaintiff was specifically targeted for a search and explain the basis for that decision.

**ANSWER:**    **Objection: Assumes facts not in evidence and ambiguous ("targeted"). Subject to and without waiving the objections, the answer is no. Lt. North noticed substantial trash in Plaintiff's cell in violation of the rules set forth in the Inmate Handbook and initiated a shakedown for the general purposes of maintaining inmate and jail personnel safety and removing any potential contraband.**

9.    Identify all contraband allegedly recovered from Plaintiff's cell.

**ANSWER:**    **Recovered contraband from the shakedown of Plaintiff's cell on January 1, 2022 included excessive packages of Ibuprofen, excessive amounts of leftover jail food, and cartons of spoiled milk.**

10.    Describe in detail every item removed from Plaintiff's cell, including legal papers.

3

**ANSWER:** **Objection: Assumes facts not in evidence. Subject to and without waiving the objection the objection, the answer is: In addition to the contraband referred to in Corporal Yingling's Answer to Interrogatory No. 9, a clear trash bag of trash was removed. No legal papers were removed from Plaintiff's cell.**

11. State whether any legal documents belonging to Plaintiff were reviewed, read, copied, photographed, or retained.

**ANSWER:** **No, Corporal Yingling did not review, read, copy, photograph, or retain Plaintiff's legal documents.**

12. Identify every person who accessed Plaintiff's legal documents.

**ANSWER:** **Objection: Ambiguous ("accessed") and assumes facts not in evidence. Subject to and without waiving the objection, Corporal Yingling does not know of any person who reviewed, read, copied, photographed, or retained Plaintiff's legal documents.**

13. Describe what was done with Plaintiff's legal documents after they were removed from the cell.

**ANSWER:** **Objection: Assumes facts not in evidence. Specifically, the Interrogatory assumes that Plaintiff's legal documents were removed from his cell. No records or grievances support this assertion, and Plaintiff has not even alleged facts establishing that such documents were removed from his cell. An interrogatory that is premised on an incorrect or unsupported factual assumption does not require a substantive response. *See* Fed. R. Civ. P. 33(b)(2)-(4).**

14. State whether any inventory list was created and identify its location.

4

**ANSWER:**   **Corporal Yingling did not create any inventory list. Contraband recovered from the shakedown of Plaintiff's cell on January 1, 2022 included excessive packages of Ibuprofen, excessive amounts of leftover jail food, and cartons of spoiled milks. A clear trash bag of trash was also removed from Plaintiff's cell.**

15.    Identify all incident reports, shakedown reports, logbooks, or memoranda relating to the search.

**ANSWER:**   **None other than the records produced with Defendants' Initial Disclosures and Defendants' Response to Plaintiff's Request for Production.**

16.    State whether you were aware that Plaintiff had filed grievances concerning staff misconduct prior to January 1, 2022.

**ANSWER:**   **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.**

17.    State whether you were aware that Plaintiff intended to pursue litigation against jail staff.

**ANSWER:**   **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.**

18.    Identify all grievances authored by Plaintiff that you reviewed prior to January 1, 2022.

**ANSWER:**   Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.

19.   Describe any conversations you had with other staff regarding Plaintiff before the shakedown.

**ANSWER:**   Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.

20.   State whether Plaintiff was ever characterized as a "problem inmate," "litigious," or similar.

**ANSWER:**   Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.

21.   Identify all complaints made by Plaintiff about staff prior to and after the shakedown, including complaints regarding interference with legal mail or legal materials.

**ANSWER:**   Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.

6

22. Identify every complaint, grievance, internal report, or allegation made by any inmate against any jail staff member within the past five years concerning the mishandling, reading, confiscation, delay, destruction, or interference with legal mail or legal documents.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.**

23. Describe any discipline imposed on staff for mishandling inmate legal materials within the past five years.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.**

24. State whether any video footage captured the January 1, 2022 shakedown and identify where it is stored.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.**

25. Explain the jail's policy regarding opening legal mail outside the inmate's presence.

**ANSWER:** **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has**

7

not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.

26.     Describe your knowledge of the August 2021 Department of Corrections shakedown, including whether Plaintiff's legal materials were searched, confiscated, or reviewed.

**ANSWER:**     **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.**

27.     Describe your knowledge of any incident in early 2022 involving Officer Gibbs and the mishandling of Plaintiff's legal mail.

**ANSWER:**     **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.**

28.     Describe your knowledge of any incident in which Officer Foster read or reviewed Plaintiff's legal documents that had been provided solely for copying.

**ANSWER:**     **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.**

29.     Identify all facts supporting your denial of wrongdoing in this matter.

**ANSWER:**     **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 interrogatories and Plaintiff has**

not obtained approval of the Court to serve additional interrogatories, so Corporal Yingling is not required to answer this interrogatory.

Respectfully,

**JONATHAN YINGLING**

By:    *s/ Hoseuk Kim*
Hoseuk Kim (Andrew) #6349370
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, IL 60062
Phone: 847-291-0200
Email: akim@ifmklaw.com

9

UNITED STATES DISTRICT COURT          )          *Leal v. Pinkerton, et al.*
                                      )
SOUTHERN DISTRICT OF ILLINOIS         )          2024-cv-00105-NJR

## DECLARATION OF JONATHAN YINGLING

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing,

**Defendant Jonathan Yingling's Answers to Plaintiff's First Set of Interrogatories**

(Interrogatory Nos. 1-29), are true and correct.

Date: __5/18/2026__                    _____
                                       Jonathan Yingling

                                       Executed in Williamson County, Illinois

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JORGE LUIS LEAL,             )
                                 )
       Plaintiff,           )
                                 )
v.                           )       Case No. 2024-CV-00105-NJR
                                 )
PINKERTON, et. al.       )
                                 )
       Defendants.      )

## CERTIFICATE OF SERVICE

I certify that on **May 18, 2026**, I caused the foregoing **Defendant Jonathan Yingling's Answers to Plaintiff's First Set of Interrogatories** to be mailed by U.S. postal service by having same placed in a sealed envelope with proper postage in the U.S. Mail receptacle located at 650 Dundee Road, Northbrook, Illinois, and addressed to the following:

Jorge Luis Leal, 14448-025
1286 Wind Crest Drive
Union City, TN 38261
jorgelleal@myyahoo.com

By:    *s/ Hoseuk Kim*
           Hoseuk Kim (Andrew) #6349370

11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JORGE LUIS LEAL,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )        Case No. 2024-CV-00105-NJR
                                    )
PINKERTON, et. al.                  )
                                    )
            Defendants.             )

## DEFENDANTS' RESPONSE
## TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

Defendants, Sommer North, Shawn Freeman and Jonathan Yingling, by and through one of their attorneys, Bhairav Radia., hereby submit the following response to Plaintiff's First Requests for Production.

## REQUESTS FOR PRODUCTION

1.      All reports, logs, memoranda, and records relating to the January 1, 2022 shakedown.

**RESPONSE:** See activity logs Bates labeled WC 2094-2715. See also documents previously produced with Defendants' initial disclosures: Plaintiff's Jail Cell Assignment History Bates labeled WC 1194-1197, and Grievances Bates labeled WC 008-288, WC 1232-1264, and WC 1453-1498. See also documents produced by the other parties in the case.

2.      Any inventory of property removed from Plaintiff's cell.

**RESPONSE:** None, as an inventory of property was not created for the incident. See also documents previously produced with Defendants' initial disclosures: Grievances Bates labeled WC 008-288, WC 1232-1264, and WC 1453-1498. See

1

also documents produced by the other parties in the case. Williamson County Defendants reserve the right to supplement.

3. All video footage depicting the search or surrounding time period.

RESPONSE: None.

4. Housing unit logs for that date.

RESPONSE: See documents previously produced with Defendants' initial disclosures: Plaintiff's Jail Cell Assignment History Bates labeled WC 1194-1197. See also enclosed housing unit activity logs. Bates labeled WC 1499-3388.

5. Policies regarding shakedowns and legal materials.

RESPONSE: See documents previously produced in Williamson County Defendants' initial disclosures: Williamson County Jail Regulations and Inmate Disciplinary Code Bates labeled WC 1198-1208, and the Williamson County Jail Inmate Handbook in effect during Plaintiff's detention, Bates labeled WC 1209-1225

6. Training manuals addressing inmate legal rights and attorney-client privilege.

RESPONSE: Objection: disproportionate to the needs of the case. Subject to the objection: None.

7. Plaintiff's grievances and responses.

RESPONSE: See documents previously produced with Defendants' initial disclosures: Grievances Bates labeled WC 008-288, WC 1232-1264, and WC 1453-1498. See also documents produced by the other parties in the case.

8. Communications referencing Plaintiff.

2

**RESPONSE:** Objection: overbroad ("communications"). Subject to the objection, see documents previously produced with Defendants' initial disclosures: Grievances Bates labeled WC 008-288, WC 1232-1264, and WC 1453-1498.

9.  Emails, texts, or internal messages mentioning Plaintiff.

**RESPONSE:** Objection: overbroad. Subject to the objection: None. Defendants reserve the right to supplement.

10.  Records reflecting litigation hold notices.

**RESPONSE:** Objection: (attorney-client privilege). Defendants will not produce any documents protected by the attorney-client privilege.

11.  Disciplinary records related to improper handling of legal materials.

**RESPONSE:** Objection: assumes facts not in evidence; overbroad. Subject to the objections: none.

12.  Documents showing reasons for searching Plaintiff's cell.

**RESPONSE:** Objection: assumes facts not in evidence. Subject to the objection: None other than any contained in the documents already produced.

13.  Records identifying officers assigned to the unit.

**RESPONSE:** See activity logs Bates labeled WC 1499-3388.

14.  Documents reflecting prior complaints against Defendants.

**RESPONSE:** Objection: overbroad and disproportionate to the needs of the case. Subject to the objections, see documents previously produced with Defendants' initial disclosures: Grievances Bates labeled WC 008-288, WC 1232-1264, and WC 1453-1498.

15.  Kiosk data related to grievances.

**RESPONSE:** See documents previously produced in Williamson County Defendants' initial disclosures: Certified Copy of Leal Grievances on Kiosk Bates labeled WC 1232-1264.

16. Documents relating to system updates that resulted in deletion of grievance records.

**RESPONSE:** Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request.

17. Any documents provided to insurers or risk managers.

**RESPONSE:** Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request.

18. Statements from witnesses.

**RESPONSE:** Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request.

19. Materials supporting any defenses.

**RESPONSE:** Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request.

20.    Any document you may rely upon at trial.

**RESPONSE:** Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request.

Legal Mail and Document Mishandling (Pattern Evidence):

21.    All documents relating to the August 2021 DOC shakedown, including confiscation records, property logs, photographs, video, and chain-of-custody documentation.

**RESPONSE:** Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request.

22.    All documents, communications, grievances, and investigative materials concerning the mishandling of Plaintiff's legal mail by Officer Gibbs in early 2022.

**RESPONSE:** Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of

documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request

23.    All documents relating to the incident in which Officer Foster was observed reading Plaintiff's legal documents provided for copying, including witness statements and internal investigations.

**RESPONSE**: **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request.**

24.    All complaints, grievances, incident reports, investigations, disciplinary findings, or lawsuits involving any jail staff member concerning the mishandling, reading, confiscation, delay, destruction, or interference with inmate legal mail or legal materials for the past five years.

**RESPONSE**: **Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request.**

25.    All policies, procedures, post orders, and training materials governing the handling of legal mail, confidential legal documents, and copying of inmate legal materials from 2021–2022.

6

**RESPONSE:** Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request.

26.    Any surveillance footage, mailroom logs, property records, or electronically stored information corroborating these incidents.

**RESPONSE:** Objection: Under the Court's scheduling and discovery order (Doc. 25, 6/27/25), each party is limited to serving 15 requests for production of documents and Plaintiff has not obtained approval of the Court to serve additional requests for production, so Defendants are not required to respond to this request.

Respectfully,

SOMMER NORTH,
SHAWN FREEMAN,
JONATHAN YINGLING,

By:    s/ Bhairav Radia
Bhairav Radia #6293600
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, IL 60062
Phone: 847-291-0200
Email: bradia@ifmklaw.com

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JORGE LUIS LEAL,             )
                              )
        Plaintiff,        )
                              )
v.                      )     Case No. 2024-CV-00105-NJR
                              )
PINKERTON, et. al.      )
                              )
        Defendants.    )

## CERTIFICATE OF SERVICE

I certify that on **May 04, 2026**, I caused the foregoing **Defendants' Response to Plaintiff's First Requests for Production** to be mailed by U.S. postal service by having same placed in a sealed envelope with proper postage in the U.S. Mail receptacle located at 650 Dundee Road, Northbrook, Illinois, and addressed to the following:

Jorge Luis Leal, 14448-025
1286 Wind Crest Drive
Union City, TN 38261
jorgelleal@myyahoo.com

                         By:    *s/ Bhairav Radia*
                                  Bhairav Radia, #6293600

8

Retail

U.S. POSTAGE PAID
FCM LG ENV
UNION CITY, TN 38261
JUN 01, 2026
$5.04
S2324P506802-30

62201



UNITED STATES POSTAL SERVICE

RDC 99

Jorge Leal
1286 Wind Crest Dr.
Union City, TN 38261

US District Court
750 Missouri Ave.,
East St. Louis, IL...

MAIL CLEARED
US MARSHALS

RECEIVED

JUN 0 8 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE